290 So.2d 235

**Andrew Jackson CULBERT**

**v.**

**STATE.**

**8 Div. 449.**

Court of Criminal Appeals of Alabama.

Feb. 12, 1974.

No brief for appellant.

William J. Baxley, Atty. Gen., Montgomery; and J. Parke Keith, Special Asst. Atty. Gen., Salem, for the State.

TYSON, Judge.

The Grand Jury of Marshall County, Alabama, indicted the appellant for the first degree murder of Arville Ora Patterson, alias "Bob" Patterson, by shooting him with a pistol. The Jury found the appellant guilty of murder in the second degree, and its verdict and judgment set sentence at twenty years imprisonment in the penitentiary.

On October 7, 1972, James Hard and his wife, Dorothy Hard, were riding to their home in the Langston community of Marshall County from the "South Sauty Fish Camp." Shortly before 5:00 in the afternoon, as they drove down the "Five Points" road, they observed a body lying along side same. They stopped, got out, and discovered that the body was the brother of Mrs. Hard, Arville Ora Patterson. Mrs. Hard testified that they observed what they believed to be two bullet holes in the top of the head of the deceased. They testified they could feel no pulse. Mrs. Hard stated she remained at the site of the body while her husband drove approximately a quarter of a mile to his sister's home where he telephoned the sheriff's office and requested assistance.

Deputy Sheriff Gene Bearden testified that he talked with two brothers, Jimmy Dee Edwards and John Frank Edwards, and each told him that the appellant, Andrew Jackson Culbert, carried a .38 pistol on his person in a holster under his left arm at all times. They further stated that

they observed the appellant driving rapidly away in his automobile from the immediate vicinity where they had heard two gunshots a short time before; that this was in the general direction where the deceased's body was found. Each of the brothers stated that they had heard what they thought to be two gunshots and stated that "Culbert was driving away faster than usual." Deputy Sheriff Bearden further testified that he observed tire marks in the road beside where the body lay, and that the marks were deeper at the "south end and diminished as they went north." He testified that he also spoke with Darwin (Dub) Patterson, the decedent's brother, and he stated that the decedent had shot Culbert's brother several years ago; that there had been friction between them ever since.

Based upon this information, Deputy Bearden, together with three other deputies, went immediately to the home of the appellant and found him seated in a chair, oiling his pistol. He stated a can of gun oil was nearby on a table, and that the appellant appeared "real nervous." After the appellant arose from the chair in which he was seated, the deputy removed a blanket from the chair, and two spent .38 caliber shells fell to the floor. The appellant was then placed under arrest and advised that he was being charged with the first degree murder of the decedent. The pistol, its holster, the gun oil, and the two spent shells were taken from the appellant and delivered to State Toxicologist Van Pruitt.

At trial, Mr. Pruitt testified that he had examined the body of Arville Ora Patterson and from same removed three .38 caliber bullets; that the cause of death was "multiple gunshot wounds primarily effecting injury to the brain, to the lungs, to the spinal cord, and to the major vessels of the chest."

Mr. Pruitt also testified that he test-fired the .38 caliber pistol, which was delivered to him, and compared slugs with those which he recovered personally from the decedent's body; that in his opinion "the three slugs were fired from the barrel of this particular weapon."

The appellant's motion to exclude the State's evidence was overruled.

The appellant's defense was that he had been at the home of Hallie and Oliver Meyers watching television with their foster son and his family. He verified that as soon as the wrestling show had ended he chatted a few minutes on the porch and left to go turn off some beans which were on his stove at his house, and returned to the Meyers' home a few minutes later to have dinner. He stated that he had shown his pistol to Mrs. Meyers' foster son, who looked at it and said that it was so dirty the appellant ought to go clean it. The appellant's testimony was in part corroborated by Mr. and Mrs. Meyers, their foster son, Jimmy Eaton, and his wife, who had been at the Meyers' home on the afternoon in question.

## I

Under the provisions of Title 13, Sections 125(92f)–125(92n), Code of Alabama 1940, as amended 1971, the trial court stated it was directing that two alternate jurors be selected for the trial of the cause. Title 13, Section 125(92l), is as follows:

"Alternate jurors.—(1) This section shall apply only in the twenty-seventh judicial circuit. In any case triable by a jury in the circuit courts of the twenty-seventh judicial circuit, the court may in its discretion order the selection of one or two alternate jurors for the trial of the case, but may order an alternate juror to take the place of a principal juror only when the principal juror is excused by the court in the exercise of its sound discretion, before the retirement of the jury to consider its verdict, by reason of some mental or physical ailment in [of] such principal juror, or his confrontation with some emergency rendering him unable to perform his duties satisfactorily.

"(2) When only one alternate juror is to be selected, the party shall be entitled to strike from a list containing the names of at least three competent jurors in addition to the minimum number specified by law, as the case may require, and shall be required to strike alternately, as provided by law, until thirteen names remain on the list; and thereupon, the court shall select by lot one name from such thirteen names, and the juror whose name is thus selected shall be the alternate juror. The remaining twelve shall be the principal jurors.

"If the court orders the selection of two alternate jurors, the parties shall be entitled to strike from a list containing the names of at least six competent jurors in addition to the minimum number specified by law, as the case may require, and shall be required to strike alternately, as provided by law, until fourteen names remain on the list; and thereupon, the court shall select by lot two names from such fourteen names, the first one selected to be designated as alternate juror number one and the other as alternate juror number two. The remaining twelve shall be the principal jurors.

"(3) If two alternate jurors are selected and both are able to perform the duties of a juror satisfactorily, the court shall order alternate juror number one to take the place of the first member of the jury who is excused from further service. If two alternate jurors are selected, but only one of them is able to perform the duties of a juror satisfactorily, then such alternate shall be ordered to take the place of any member of the jury who is excused from further service. An alternate juror who is able to perform satisfactorily the duties of a juror may be ordered to take the place of a juror who himself was originally an alternate juror, under the same conditions as he might have been ordered to take the place of one of the twelve principal jurors.

"(4) Alternate jurors shall obey all orders and admonitions of the court. If the principal jurors are ordered to be kept in the custody of an officer or officers during the trial, such alternate jurors shall also be kept in custody with the regular jurors. All alternate jurors shall be seated near the principal jurors with equal facilities for observing the proceedings in the trial, and shall attend the trial at all times in company with the principal jurors. If any alternate juror is ordered to become a member of the jury, he shall take the same oath as that administered to other jurors, and shall have the same functions, powers, duties, and privileges as regular members of the jury. Any alternate juror who has not been ordered to take a place on the jury prior to the retirement of the jury to consider a verdict shall be discharged. (1971, No. 81, appvd. July 15, 1971.)"

From the record:

"THE COURT: Well, I'm going to, at this time, indicate that we are going to select fourteen jurors, and then select the two alternate jurors by lot as provided by the Act passed by . . . Senate Act #36. I have a copy of that if you need a copy of it, but we won't start striking the jury until after lunch, so you all have that much longer to reconsider. If you want to bring it back up again at that time, bring it back up again at that time. Please proceed at this point as though you were going to strike, and provide for two alternate jurors."

■ The appellant here asserts that the procedure used was unconstitutional, and that he was being denied his right to trial by jury under the provisions of Article I, Section 11, Constitution of Alabama 1901. In Dixon v. State, 27 Ala.App. 64, 167 So. 340, we find:

" . . . [S]ection 11 of the Constitution does not prevent the Legislature

from making such regulations as it thinks proper touching the selection of a jury, so long as the fundamental requisites of a jury are not impaired. Those fundamental requisites are that the jury shall be composed of 12 persons, that they shall be impartial, and that the verdict must be unanimous. . . ."

See also Kirk v. State, 247 Ala. 43, 22 So.2d 431; Singleton v. State, 288 Ala. 519, 262 So.2d 768.

This case presents a question of first impression in the Alabama Appellate Courts, i.e., the right of the trial judge to direct that alternate jurors be selected for a "protracted trial."

Where, as here, the trial court very carefully qualified the jury and gave the appellant a full venire from which to select, and the two alternate jurors were discharged, without objection, just before the jury retired to consider its verdict, we are of the opinion that no error is here shown. State v. Blood, 70 R.I. 85, 37 A.2d 452. See also Annotation; 84 A.L.R.2d 1288, at 1299; and Yarbrough v. State, 105 Ala. 43, 16 So. 758; Commonwealth v. Almeida, 362 Pa. 596, 68 A.2d 595, 12 A.L.R.2d 183; also Annotation, 10 A.L.R. Fed. 185, at 191.

■ Moreover, this Court will not search for constitutional objections on mere suggestion of unconstitutionality. State v. Dillard, 196 Ala. 539, 72 So. 56; Coatney v. State, 49 Ala.App. 385, 272 So. 2d 593; Thomas v. State, 50 Ala.App. 227, 278 So.2d 230.

## II

■ The appellant contends that the arresting officers lacked probable cause to arrest him, and therefore the resulting search and seizures were unlawful. Title 15, Section 154, Code of Alabama 1940, is as follows:

"*Arrest by officer without warrant; when and for what allowed.*—An officer may also arrest any person, without warrant, on any day and at any time, for any public offense committed, or a breach of the peace threatened in his presence; or when a felony has been committed, though not in his presence, by the person arrested, or when a felony has been committed, and he has reasonable cause to believe that the person arrested committed it; or when he has reasonable cause to believe that the person arrested has committed a felony, although it may afterwards appear that a felony had not in fact been committed; or on a charge made, upon reasonable cause, that the person arrested has committed a felony."

In construing the above section, our Supreme Court, in Duncan v. State, 278 Ala. 145, 176 So.2d 840, through Lawson, J., stated:

"In Union Indemnity Co. v. Webster, 218 Ala. 468, 118 So. 794, it was said, in effect, that 'reasonable cause to believe,' as used in § 154, Title 15, Code 1940, is knowledge of circumstances such as would lead a reasonable man of ordinary caution, acting impartially, reasonably and without prejudice, to believe the person arrested to be guilty. . . ."

Deputy Bearden, at trial, testified:

"Q. What was it that Mr. Jimmy Dee Edwards told you?

"A. I asked Jimmy Dee if he heard any gun fired and he said yeah, he heard two shots. And I asked him did he see anybody leaving and going toward South Sauty, and he said yes, sir, he saw Jack Culbert, and said he was driving faster than he usually did, said he usually drove slow, but at that particular time he was driving real fast.

"Q. Did he tell you of the time interval between the shots and seeing Jack Culbert?

"A. He said just a short time after the gun fired.

"Q. Did he tell you that he knew Mr. Culbert?

"A. Yes, sir."

Moreover, Deputy Bearden, prior to going to the home of the appellant, had been advised of friction between the decedent and the appellant through his conversation with Bob Patterson. Further, two of the officers participating in the investigation had seen the appellant driving toward his home and had stopped him due to the description of the car, which had been given on the sheriff's radio. Appellant stated to them that he had heard about the death of Bob Patterson, and they had then allowed him to proceed toward his home. Under the circumstances herein outlined, it is clear that the officers had probable cause to arrest the appellant and to take possession of the pistol, holster, the two spent shells, and the can of gun oil, seized in his presence, at his home. These items were properly admitted, over objection, at trial. Miller v. State, 51 Ala.App. 303, 285 So.2d 113, cert. denied, 291 Ala. 793, 285 So.2d 117; Reese v. State, 49 Ala.App. 167, 269 So.2d 622, cert. denied 289 Ala. 750, 269 So.2d 625.

## III

During the trial of the cause, at a noon recess, the following transpired:

"THE COURT: Mr. Beard has a matter that he wants to call to the attention of the court.

"MR. BEARD: Judge, I would like, on behalf of the defendant, to move for a mistrial on the following grounds: Approximately twenty-five minutes till two, the jury filed out of the judge's chambers into the hallway. At a point where Mr. Starnes had positioned himself talking to three or four witnesses, two of whom had previously testified, he exchanged greetings with a number of jurors as they walked by rather than walking away. The court should admonish him and indicate that would result in a mistrial because of the influence possibly exerted over the jurors. It was improper and it would prejudice the defendant's case. On those grounds, we move for a mistrial."

The trial court then examined the attorneys as to whether or not any of them had spoken to a juror, or nodded to one, and upon being advised that they had not, and that the attorneys were merely talking to some prospective witnesses when they saw the jury as they entered the end of the hallway, that the trial court then brought the jury back in, and the following transpired:

"(Whereupon, the jury was seated in the jury box, and the following proceedings were had):

"THE COURT: Ladies and gentlemen, the court would like to ask you questions: A few minutes ago as you were leaving this courtroom, as you went out the door to the hall, Mr. Starnes, the District Attorney was talking with a witness. Did any member of the jury overhear any of the conversation between Mr. Starnes and the witness?

"A JUROR: I heard a few words just as I went by.

"THE COURT: What is your name?

"A JUROR: Winnie Terrell.

"THE COURT: She is Alternate Juror No. 2. Would what you overheard in any way prejudice you in this case? Did you hear anything connected with this case?

"MRS. TERRELL: No, sir.

"THE COURT: You did not hear anything that you could connect with this case?

"MRS. TERRELL: No, sir.

"THE COURT: Did Mr. Starnes greet any member of the jury as they passed

by? Did any of you notice he was greeting you? Did he make any remarks to any member of the jury as you passed by?

"(Whereupon, there was no response from the jury).

"THE COURT: It is improper, of course, for any attorney, party, witness, or any person whatsoever, to, in any way attempt to curry your favor. The case is to be decided upon the evidence and nothing else. All personal considerations are to be set aside. Of course, you are not to give any weight whatever to the personalities involved in the trial. Is there any member of the jury who cannot do that?

"(Whereupon, there was no response from the jury).

"THE COURT: I am going to overrule your motion for a mistrial, Mr. Beard.

"MR. BEARD: We except."

The Supreme Court, in Shadle v. State, 280 Ala. 379, 194 So.2d 538, stated:

". . . Of course, it is well recognized that the granting of a mistrial is within the sound discretion of the trial court, for he, being present, is in a much better position to determine what effect, if any, some occurrence may have upon the jury's ability to decide the defendant's fate fairly and justly. And we will not interfere with the trial judge unless there had been a clear abuse of discretion . . . ."

As shown by the record above, none of the attorneys did talk to the jurors, nor is there a separation indicated by the record. Moreover, the jurors did not overhear the conversations between the attorneys and the prospective witnesses. Under these circumstances, we are of the opinion that the trial court correctly determined that no injury or prejudice to the appellant occurred, and the motion for a mistrial was properly denied. Cunningham v. State, 47 Ala.App. 730, 261 So.2d 69, and authorities therein cited.

## IV

The appellant, at trial, moved to exclude at the close of the State's case, and also presented his motion for a new trial, challenging the weight and sufficiency of the evidence in this cause.

Murder in the second degree is the unlawful killing of a human being with malice, but without deliberation or premeditation. Smith v. State, 47 Ala.App. 513, 257 So.2d 372; Young v. State, 47 Ala. App. 674, 260 So.2d 406; Miller v. State, 38 Ala.App. 593, 90 So.2d 166; Warren v. State, 34 Ala.App. 447, 41 So.2d 201.

The conflict in the evidence presented a question for the jury to determine, and the evidence was sufficient, if believed by the jury, under the required rule to support the verdict. Miller v. State, 38 Ala.App. 593, 90 So.2d 166.

Thus, the trial court's rulings, denying the appellant's motions, were correct.

## V

At the conclusion of the trial court's extensive oral charge, the appellant announced, "No exceptions," and the trial court then gave thirteen of the appellant's written requested charges.

Refused charges one and two were affirmative in nature and properly refused under the evidence. The remaining refused charge was properly covered in the trial court's oral charge and the given charges; hence, it's refusal was without error. Title 7, Section 273, Code of Alabama 1940.

## VI

We note from the colloquy at the close of trial that the appellant was not an indigent within the meaning of Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.

Ed.2d 493; and Caton v. Alabama, 392 U. S. 645, 88 S.Ct. 2298, 20 L.Ed.2d 1355.

Accordingly, not having been favored with a brief from appellant's counsel, we have carefully examined this record, as is our duty, together with the contentions set forth in the motion for new trial and assignments of error. See Boswell v. State, 50 Ala.App. 718, 282 So.2d 337.

After carefully examining this record, as required by Title 15, Section 389, Code of Alabama 1940, we find same to be free from error. The judgment of the trial court is therefore due to be and the same is hereby

Affirmed.

All the Judges concur.