This is a consolidated appeal of Joan F. Bragg, Betty L. Jeanbourquin, and Richard Kitchens. Each was indicted, in a two-count indictment, for trafficking in marijuana and possession of tablets containing diazepam (Valium) and residue containing pentazocine (Talwin). Their consolidated trial resulted in Kitchens and Jeanbourquin being found guilty on both counts of the indictment and Bragg being found guilty of count two, possession of tablets containing diazepam and residue containing pentazocine. Kitchens was sentenced to 20 years in the penitentiary, 3 years' minimum mandatory confinement, fined $25,000, and ordered to pay $25.00 to the Crime Victims' Compensation Commission. Jeanbourquin was sentenced to 10 years in the penitentiary, 3 years' minimum mandatory confinement, fined $25,000 and ordered to pay $25.00 to the Crime Victims' Compensation Commission. Bragg was sentenced to 5 years' imprisonment, 180 days to be served and the remainder suspended with 4 years' probation.
Officers of the Birmingham Police Department obtained a search warrant for a house located at 6616 1st Avenue South in Birmingham. The warrant was based on an affidavit which alleged that information had been received from a reliable informant who had seen a large amount of marijuana in the house within the last 48 hours. The warrant stated that the residents of the house were a white male known as Richie and a white female known as Betty.
The officers entered the house by force, after they had received no response from their knocking on the door and identifying themselves as police officers. The officers discovered several people on the premises, including Richard Kitchens, Betty Jeanbourquin, and Joan Bragg. The record is unclear as to whether Bragg was in the house when the officers arrived or came on the scene after the search was under way, but, at some point, she was inside the house during the search and was required to remain there.
The search resulted in the discovery of various controlled substances throughout the house, including marijuana and two vials containing residue of pentazocine. Valium tablets and a small quantity of marijuana were found in Bragg's purse. *Page 967 
 I
Appellants Jeanbourquin and Kitchens argue that the evidence presented by the state was insufficient to prove that the seized green plant material contained more than 2.2 pounds of marijuana, as required by § 20-2-80, Code of Alabama 1975, to support a conviction for trafficking in cannabis.
Appellants' argument relies on this court's ruling inMulhern v. State, 494 So.2d 787, 789 (Ala.Cr.App. 1986), wherein we held that "to make out a prima facie case, the State must prove that the accused was in possession of more than 2.2 pounds of marijuana." In Mulhern, the only evidence presented by the state to establish the required amount of marijuana was a lab report on which the weight of the green plant material was recorded.
In the case sub judice, the amount of marijuana was proven by the testimony of Mary Holt, supervisor for the analytical chemistry section of the Alabama Department of Forensic Sciences. Mrs. Holt testified that she received the plant material, in several different boxes, from Officer Wesson. The contents of the boxes were spread out on a piece of paper and a "gross physical characteristics" examination was performed to see if the plant material looked like marijuana. Next, a microscopic examination was done to determine the presence of certain characteristics that are on the leaf fragments of marijuana. Finally, a chemical analysis, known as the Duquenois-Levine test, was performed on 10 random samples from each box to determine whether the material was, in fact, marijuana. Based on these procedures, Mrs. Holt testified thatall the plant material contained in the boxes was marijuana. The plant material was then weighed, and Mrs. Holt stated that the total weight was 26.38 pounds.
This testimony by Mrs. Holt far exceeds the evidence offered by the state in Mulhern. Her testimony that the entire quantity of green plant material was marijuana and that its total weight was 26.38 pounds sufficiently established the existence of the required amount of marijuana and supports a conviction for trafficking in cannabis. Higdon v. State, 527 So.2d 1352
(Ala.Cr.App. 1988).
 II
Appellants Jeanbourquin and Kitchens further argue that the state failed to establish that they had actual or constructive possession of the illegal substances seized. However, at trial, counsel directed his motion for judgment of acquittal solely to the trafficking charge contained in count one of the indictment against Jeanbourquin. (R. 501-02).[1] Thus, we address only the question of whether the state presented a prima facie case of trafficking against Jeanbourquin.
In order to convict a defendant for trafficking in cannabis, under § 20-2-80, the state must establish, beyond a reasonable doubt, that the defendant was knowingly in possession of more than 2.2 pounds of marijuana. Mulhern v. State. Actual possession need not be shown if the state establishes that the defendant was in constructive possession of the illegal substance. German v. State, 500 So.2d 478 (Ala.Cr.App. 1986). Where the state asserts constructive possession, it must prove beyond a reasonable doubt that the defendant had knowledge of the presence of the illegal substance. Yarbrough v. State,405 So.2d 721 (Ala.Cr.App.), cert. denied, 405 So.2d 725 (Ala. 1981). For purposes of establishing constructive possession, the state can prove the defendant's knowledge of the presence of the illegal substance by circumstantial evidence. Korrecktv. State, 507 So.2d 558 (Ala.Cr.App. 1986). When the accused was in nonexlusive possession of the premises upon which the illegal substance was discovered, as was the situation in the case sub judice, suspicion may arise that all the inhabitants of the premises knew of the presence of the illegal substance.Temple v. State, 366 So.2d 740 (Ala.Cr.App. 1978). However, *Page 968 
this suspicion alone is not adequate to infer knowledge. The suspicion must be supported by evidence connecting the accused with the illegal substance. Id.
In the instant case, the evidence propounded by the state to establish constructive possession is primarily circumstantial; therefore, we must view it in the light most favorable to the prosecution. Cumbo v. State, 368 So.2d 871 (Ala.Cr.App. 1978), cert. denied, 368 So.2d 877 (Ala. 1979).
The evidence offered by the state established Jeanbourquin's presence during the search of the premises. Officer Wesson, one of the investigating officers, testified that there was a strong odor of marijuana in the house, which he noticed as soon as he opened the door. He further testified that the officers found illegal substances in all parts of the house. Marijuana was found in a paper sack under the coffee table, in a "Mr. Coffee" box in the kitchen, on the television in the living room, in a large bag in the attic, in two bags in a bedroom closet, and in a clothes hamper in the dining room, and a large quantity was found spread out on the floor under heat lamps in one of the bedrooms. In addition, the officers discovered syringes; two medicine bottles on a nightstand, which were later determined to contain residue of pentazocine; bottles of red and white tablets in a dresser; scales; and small plastic bags. Officer Wesson further testified that the search also produced a notification letter, an Alabama Power Company bill, and a U.S. District Court letter, all addressed to Mrs. Betty Jeanbourquin, at 6616 1st Avenue South, Birmingham, Alabama 35212.
Based on the evidence presented by the state, there can be little doubt that Jeanbourquin was aware of the presence of the illegal substances inside the house. " '[W]hen the presence of the accused at the scene is established and evidence of his knowledge of the presence of the prohibited substance is shown (even by circumstantial evidence), along with any other incriminating evidence, the issue of the defendant's guilt should be submitted to the jury.' [Citations omitted.]"German v. State, 429 So.2d 1138, 1143 (Ala.Cr.App. 1982). We find that the evidence offered by the state in support of a finding of Jeanbourquin's constructive possession of the marijuana was sufficient; the issue of appellant's guilt was properly submitted to the jury.
 III
Appellant Bragg contends that the Valium tablets, seized from her purse, were discovered pursuant to an illegal search and, therefore, should have been suppressed.
The record reveals that Officer Oladiende told Bragg that she needed to see some identification. Bragg indicated that her identification was in her purse and then attempted to reach for it. Officer Oladiende instructed Bragg to stop and said that "she would get it." At that point, Officer Oladiende opened the purse to "secure it" and make sure there were no weapons inside. During her inspection of the purse, Officer Oladiende removed Bragg's billfold, as well as some marijuana and a small box containing some tablets, which were later determined to be Valium. The record is unclear as to the order of discovery or the location of these items within Bragg's purse.
Bragg argues that the opening of the box containing the Valium tablets constituted an unlawful search.
It is clear that "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person."Ybarra v. Illinois, 444 U.S. 85, 91, 100 S.Ct. 338, 342,62 L.Ed.2d 238 (1979). It is also clear that a warrant which designates particular persons and premises to be searched does not authorize the exercising officers to conduct a search of all persons not named in the warrant who may be present on the premises at the time the warrant is exercised. Travis v. State,381 So.2d 97 (Ala.Cr.App. 1979), cert. denied, 381 So.2d 102
(Ala. 1980). However, police officers executing a valid search warrant do have the authority to detain persons found on the premises *Page 969 
subject to the warrant. See Michigan v. Summers, 452 U.S. 692,101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). "In assessing the justification for the detention of an occupant of premises being searched for contraband pursuant to a valid warrant, both the law enforcement interest and the nature of the 'articulable facts' supporting the detentions are relevant." Id. at 702,101 S.Ct. at 2594.
In the instant case, Bragg was present on the premises when the search was being conducted. The record indicates that marijuana was found in all parts of the house. In the room where Bragg was, marijuana was in a bag under a table and on the television. It would be unreasonable for us to assume, given the prevalence of the marijuana and its strong odor throughout the house, that Bragg or any other person therein would have been unaware of its presence. These facts readily justified the officer's detention of Bragg on the premises while the investigation was in progress.
Officer Oladiende testified that she searched Bragg's purse to "secure it" and make sure there were no weapons inside. Such a search is completely justified when it is conducted in a reasonable manner for the purpose of discovering weapons, where the officer has reason to suspect that he is dealing with a person who may be armed and dangerous. Terry v. Ohio,392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicions or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." Id. at 27, 88 S.Ct. at 1883. In the casesub judice, there is no doubt that Officer Oladiende was justified in making a cursory inspection of Bragg's purse for the purpose of discovering any concealed weapon. However, this authority should not have been extended to justify a complete evidentiary search. As stated in Terry v. Ohio, 392 U.S. at 29,88 S.Ct. at 1884, "The sole justification of the search in the present situation is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer."
However, in conducting a valid Terry search, if the officer sees evidence in "plain view," that evidence can be lawfully seized. See Owen v. State, 418 So.2d 214 (Ala.Cr.App. 1982). For evidence to be legitimately seized under the "plain view doctrine," it must have been inadvertently discovered by an officer who is in a place where he has a legal right to be and it must be immediately apparent to the discovering officer that the object seen is evidence of a crime or contraband. McElroyv. State, 469 So.2d 1337 (Ala.Cr.App. 1985).
While the record before us supports the authority of Officer Oladiende to conduct a cursory search of the purse for weapons and supports a finding that she was able to recognize marijuana, it does not provide a sufficient basis from which we can infer that the marijuana was inadvertently discovered in "plain view."
When a defendant challenges the admissibility of evidence on the ground that it was seized pursuant to a warrantless search, the burden is on the state to prove that the search meets the requirements of one of the recognized exceptions to the requirement of a search warrant. Sawyer v. State, 456 So.2d 114
(Ala.Cr.App. 1984); 4 W. LaFave, Search and Seizure § 11.2(b) (2d ed. 1987).
In the instant case, the contraband found in the purse would be admissible if the marijuana had been found under such circumstances as to meet all the requirements of the plain view doctrine. If such proof were present in the record of this case, we would be inclined to hold that, at the point of the discovery of the marijuana, probable cause for Bragg's arrest arose and the subsequent complete search of the purse and the opening of the box containing the Valium would have been justified. However, the record before us contains no such proof; therefore, we must conclude that the state failed to carry its burden in *Page 970 
establishing the lawfulness of the seizure of the marijuana and Valium in Bragg's purse and that the Valium and marijuana should have been suppressed.
Based on our review of the record of this case and the applicable law, we affirm the convictions of Kitchens and Jeanbourquin. However, we find that the state failed to meet its burden of showing that the seizure of the marijuana came within one of the exceptions to the search warrant requirement and, therefore, Bragg's conviction must be reversed and a judgment rendered in her favor.
AFFIRMED AS TO APPELLANTS KITCHENS AND JEANBOURQUIN; REVERSED AND JUDGMENT RENDERED AS TO APPELLANT BRAGG.
All Judges concur.
[1] Although the jury found Jeanbourquin and Kitchens guilty on both counts, the trial court, when sentencing them, treated the two crimes as one crime. (R. 678).