Dennis Robert Dentmon was indicted for trafficking in morphine in violation of Ala. Code 1975, § 20-2-80, and for the possession of Oxycodone, Diazepam, and Phentermine Hydrochloride in violation of § 13A-12-212 in indictment number CC-89-836. In indictment number CC-89-837, Dentmon was charged with five counts of attempted murder under § 13A-4-2. The indictments were consolidated for trial, and Dentmon was convicted on all counts. He was sentenced as a habitual offender and was given consecutive sentences of life without parole in each of the five attempted murder cases and in the trafficking case. He was given three concurrent 50-year sentences of imprisonment for his three convictions involving the possession of a controlled substance. In addition, he was fined a total of $135,000. Dentmon raises four issues on this appeal from those convictions.
 I.
The defendant argues that his motion to suppress should have been granted because the trafficking charge was brought under Ala. Code 1975, § 20-2-80, although the alleged crime occurred, he says, after this section had been repealed.
Initially, we note that this issue was not properly preserved for review. The defendant is attempting to attack the sufficiency of the indictment through a motion to suppress. That is not the function or purpose of a motion to suppress. Rule 16.2, A.R.Cr.P.Temp., provides that "[o]bjections based on defects in the commencement of the proceeding or in the charge, other than lack of subject matter jurisdiction or failure to charge an offense, may be raised only by pre-trial motion made in accordance with Temporary Rule 16.3." Rule 16.3(a) provides in pertinent part that "[a]ny motion which must under Temporary Rule 16.2 be made before trial must be made: (a) [i]n circuit court at or before arraignment or by such later date as may be set by the court."
Further, we find the defendant's argument to lack merit even if the issue had been properly preserved. The offense occurred on March 31, 1989. Count I of the indictment in CC-89-836 charged the defendant with trafficking in morphine "in violation of § 20-2-80 of the Code of Alabama, 1975, as amended."
Contrary to the defendant's argument, Section 20-2-80 wasnot repealed. The 1989 Cumulative Supplement of Volume 14 of the Code of Alabama 1975, contains the following notation: "§§20-2-80, 20-2-81. Transferred to §§ 13A-12-231 and 13A-12-232
by Acts 1988, 1st Sp.Sess., No. 88-918, p. 512, § 2, effective September 30, 1988." The title to Act No. 88-918 states that, with respect to the issue under consideration, the purpose of the act is "to reorganize Article 5, Chapter 12, Title 13A, and Chapter 2, Title 20, as appearing in Volumes 12 and 14, respectively, of such cumulative *Page 418 
supplement, so as to place the principal drug crime statutes in Title 13A, the Alabama Criminal Code."
Section 20-2-80, as presently contained in § 13A-12-231, is virtually identical to § 20-2-80 as it existed prior to the transfer. See 1987 Ala. Acts 1246, No. 87-708, § 2 (August 12, 1987). The transfer of § 20-2-80 to 13A-12-231 did not increase the penalties for trafficking because the 1987 amendment to the trafficking statute provided that violations of § 20-2-80
"shall be treated as Class A felonies for purposes of Title 13A, including sentencing under the Habitual Felony Offender Act." Act No. 87-708, § 2(10).
"Miscitation of a code section does not void an indictment which otherwise states an offense; and, in the absence of a showing of actual prejudice to the defendant, reference to the erroneous code section will be treated as mere surplusage."Ex parte Bush, 431 So.2d 563, 564 (Ala.), cert. denied, Bush v.Alabama, 464 U.S. 865, 104 S.Ct. 200, 78 L.Ed.2d 175 (1983). The "motion to suppress" was properly denied.
 II.
Dentmon argues that the prosecutor violated the principles ofBatson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69
(1986), in striking all black persons from the jury venire. We find that this issue was not properly preserved for review.
After the jury had been selected and empaneled, the following occurred.
"THE COURT: Is this the state's jury?
 "MR. HUBBARD [assistant district attorney]: Yes, sir.
"THE COURT: Is this the defendant's jury?
 "MR. BROOKS: Yes, sir, with the exception of our pending motion."
The jury was then sworn and excused for the remainder of the day, and the remaining members of the venire were excused from this particular case. After that, the record reflects the following:
 "THE COURT: Let the record reflect the jury is outside the presence of the Court. Both parties are present with counsel. I understand you wish to take up a matter at this time.
 "MR. BROOKS [defense counsel]: Yes, sir. When the Court asked us at the close of the striking if this was our jury, our objection is basically that under the auspices of the [Batson] case, this is not a racially impartial jury. We contend that we have a white defendant, but we still feel like, even under those circumstances, it is not a fair and impartial jury to allow the state to strike all the black panelists. I would like the record to point out that this was a forty-four member panel in this particular courtroom. There were eight blacks on it. By my records, the state used eight of its peremptory strikes to strike all of the blacks, and unless there can be shown a racially neutral reason for the strikes, I feel like it's an improper jury to try this case."
The basis for the prosecutor's response to this objection was that Batson did not apply because the defendant was white. The trial judge overruled defense counsel's objection without further argument from either side.
In this case, we find that the Batson objection was untimely and preserved nothing for review. "[I]n order to preserve the issue for appellate review, a Batson objection, in a case in which the death penalty has not been imposed, must be made prior to the jury's being sworn." Bell v. State, 535 So.2d 210,212 (Ala. 1988). See also Ex parte Durden, 394 So.2d 977, 978
(Ala. 1981) ("The writ is quashed because Petitioner's objection to the composition of the jury came after the jury was impaneled and sworn; and, thus, this objection, although well taken, was untimely."). "Timeliness in this instance would indicate that the objection should be made early enough to give the trial court sufficient time to take corrective action without causing undue delay if it deemed action necessary."Williams v. State, 530 So.2d 881, 884 (Ala.Cr.App. 1988). See also Edwards v. State, 515 So.2d 86, 96 (Ala.Cr.App. 1987). *Page 419 
Here, defense counsel indicated that the jury was acceptable "with the exception of our pending motion." The particular objection raised by this motion was not identified until after the jury had been sworn and the remaining venire-members had been dismissed. There is no indication in the record that the trial court agreed to consider any Batson objection at a later time. Ex parte Branch, 526 So.2d 609, 625 (Ala. 1987) ("The trial judge should rule on any motion that attacks the state's use of its peremptory strikes before the jury is sworn to try the case, unless, of course, the parties agree to allow the state to present race-neutral reasons at a later time.").
 III.
On appeal, the defendant contends that Ala. Code 1975, §15-5-8, is unconstitutional because it authorizes the nighttime execution of a search warrant for controlled substances based upon probable cause only, while requiring a stricter standard for the nighttime execution of a warrant for other types of property. Section 15-5-8 provides:
 "In cases in which the property to be seized does not include a controlled substance, a search warrant must be executed in the daytime unless the affidavits state positively that the property is on the person or in the place to be searched, in which case it may be executed at any time of the day or night. Except in cases in which the property to be seized includes a controlled substance, the issuing judge or magistrate must state in the warrant, according to the character of the affidavits, whether it is to be executed by day or at any time of the day or night. In cases in which the property to be seized includes a controlled substance, a warrant may be executed at any time of the day or night."
In Ex parte DeMent, 424 So.2d 659, 660 (Ala. 1982), the Alabama Supreme Court held unconstitutional a statute permitting a nighttime probable cause search warrant to be issued in only three judicial districts of this state. The court found that the classification, which was based on "any circuit composed of one county and having not less than five nor more than seven circuit judges," id., did not have a reasonable relationship to the purpose of the statute, id. at 661. In that case, the Supreme Court specifically declined to "reach the question of whether such legislation would be constitutional if applied to the entire state." Id. at 662. That is the question which the defendant presents on this appeal.
"The [United States] Supreme Court . . . has never held that an applicant for a nighttime search warrant must, under the Fourth Amendment, show special circumstances to justify a nighttime search. As a result, the constitutional status of nighttime searches remains unclear. . . ." W. Ringel, 1Searches Seizures, Arrests and Confessions § 6.2(c) at 6-5 (1990). See Gooding v. United States, 416 U.S. 430,94 S.Ct. 1780, 40 L.Ed.2d 250 (1974) (holding that 21 U.S.C. § 879(a), which governs warrants for searches for controlled substances, requires no special showing for a nighttime search, other than a showing of probable cause). See also, United States v.Castle, 213 F. Supp. 52, 53-54 (D.D.C. 1962) (statute authorizing issuance of a search warrant executable at any time of the day or night in cases involving violation of narcotics laws is not violative of constitutional amendment pertaining to issuance of search warrants, in view of fact that the statute contains a provision that the search warrant can be issued only upon probable cause).
One respected commentator has noted that "[r]elatively little attention has been given to" the question of "whether there are special limitations upon nighttime searches flowing from the Fourth Amendment" in addition to the requirement of probable cause. W. LaFave, 2 Search and Seizure, § 4.7(b) at 264 (2d ed. 1987). If the constitution does not require probable cause plus the additional justification of a "positive" showing that the property sought is in the place to be searched, the defendant can hardly complain of any denial when that special justification is placed on the execution of a nighttime search for certain types of property. See Young v. State, 283 Ala. 676,680, 220 So.2d 843, 846 *Page 420 
(1969) ("That a presumptive, procedural right . . . not guaranteed by state or federal constitution, when granted to some, if not most, defendants in criminal cases, must be granted to all defendants similarly situated, or it is unconstitutional, is simply not the law.").
Although tempted, this Court will not answer the constitutional question presented. At trial, the grounds for the alleged unconstitutionality of § 15-5-8 argued on appeal were hardly mentioned:
 "[Defense counsel:] I would state as grounds for that that the contents of the search warrant is unconstitutional and that it invades the defendant's right of privacy, and this statute upon which this search warrant is based on has different sections for the execution of search warrants on the basis of controlled substances as opposed to other search warrants. * * * There's no such thing, in my opinion, as the drug section to the 14th Amendment."
"[T]his Court will not search for constitutional objections on mere suggestion of unconstitutionality." Culbert v. State,52 Ala. App. 167, 171, 290 So.2d 235, 238 (1974). "It is the law, of course, that a party attacking a statute has the burden of overcoming the presumption of constitutionality, of negativing every conceivable or reasonable basis which might support the classification, and of showing clearly that the statute is unjustly discriminatory or that the classification is essentially arbitrary or unreasonable." Thorn v. JeffersonCounty, 375 So.2d 780, 787 (Ala. 1979). "Because the question of the constitutionality of [§ 15-5-8] comes before this court without the benefit of 'concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions,' Bakerv. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663
(1962), we decline to pass upon this 'ill-defined controversy.' " State v. Woodruff, 460 So.2d 325, 331 (Ala.Cr.App. 1984).
"This court, on appeal, will not consider the constitutional validity of statutes, unless the question is presented and is essential to a disposition of the case." City of Mobile v. GulfDevelopment Co., 277 Ala. 431, 439, 171 So.2d 247, 255 (1965).
 " 'The decision of a question involving the constitutionality of an act of Congress is one of the gravest and most delicate of the judicial functions; and while the court will meet the question with the utmost firmness, when its decision is indispensable, it is the part of wisdom, and a just respect for the legislature renders it proper to waive it, if the case in which it arises can be decided on other points.' Ex parte Randolph, 2 Brock. 447."
Smith v. Speed, 50 Ala. 276, 283 (1874). " 'Generally courts are reluctant to reach constitutional questions, and should not do so, if the merits of the case can be settled on non-constitutional grounds.' " Lowe v. Fulford, 442 So.2d 29,33 (Ala. 1983).
Here, we need not decide the constitutionality of § 15-5-8
because even if we declared it unconstitutional, we would still uphold the admissibility of the evidence seized pursuant to the search warrant under the "good faith exception" to the exclusionary rule. The good-faith exception to the Fourth Amendment exclusionary rule applies when an officer's reliance on the constitutionality of a statute is objectively reasonable but the statute is subsequently declared unconstitutional.Illinois v. Krull, 480 U.S. 340, 107 S.Ct. 1160, 94 L.Ed.2d 364
(1987).
 "Unless a statute is clearly unconstitutional, an officer cannot be expected to question the judgment of the legislature that passed the law. If the statute is subsequently declared unconstitutional, excluding evidence obtained pursuant to it prior to such a judicial declaration will not deter future Fourth Amendment violations by an officer who has simply fulfilled his responsibility to enforce the statute as written."
Krull, 480 U.S. at 349-50, 107 S.Ct. at 1167. Therefore, we hold that the motion to suppress was properly denied. *Page 421 
 IV
The defendant argues that the prosecution failed to lay a proper predicate for the admission of the results of the scientific tests identifying the controlled substances because the state failed to show that the tests employed had been accepted by the scientific community and because the state failed to show that the tests were conducted "under the proper procedures."
At trial, Ronald D. Hubbard testified that he was and had been employed by the Alabama Department of Forensic Sciences for the past nine years, and that his major duty was determining the existence of controlled substances. In general terms, he described the various steps and tests he performed in identifying the several controlled substances involved in this case, and he stated that "the normal identifying instrument would be an infrared spectrophotometer." Hubbard stated that this was the method used within the Department of Forensic Sciences in most cases.
"[I]t is generally held that . . . a predicate [for the admission of scientific test results] must show that the circumstances of the taking of the sample, the identification, maintenance, and transporting of it, and the testing itself are scientifically acceptable and reasonably expected to produce results which are accurate and reliable." Aycock v. Martinez,432 So.2d 1274, 1277 (Ala. 1983). See also, Ex parte Dolvin,391 So.2d 677, 679 (Ala. 1980). In this case, we are not concerned with a test which has not yet gained standing and scientific acceptance in the particular field in which it belongs. Compare Frye v. United States, 293 F. 1013 (D.C. Cir. 1923) (systolic blood pressure lie detector test). See generally 22 Am.Jur.P.O.F. 385 Identification of Substances byInstrumental Analysis (1969).
At trial, defense counsel's objection was: "There's been no basis laid for him to testify concerning any conclusions of any particular type of scientific test without laying a predicate concerning the nature of the tests and whether they comply with the Alabama standards on what is submitted into evidence based on those scientific tests." We recognize that Hubbard did notspecifically testify that the tests he employed were accepted in the scientific community, that the tests were reliable, and that the tests were performed according to "proper procedure." However, our review of his testimony convinces us that those facts can be readily and reasonably inferred from his testimony just as clearly as if he had used those identical words in testifying. For that reason, we find no error in the admission of the expert's identification of the controlled substances.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.