[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1310 
Reginald Toney was convicted of trafficking in cocaine and was sentenced to life imprisonment as a habitual offender. On this appeal of that conviction, he raises two issues.
On October 6, 1988, almost two pounds of cocaine was found during a warrantless search of the defendant's residence and automobile. At the time of the search, the defendant was on parole from the penitentiary following convictions for robbery and receiving stolen property.
In 1987, when the defendant was released on parole, his certificate of parole listed the following conditions:
 "2. I shall not change my residence or employment or leave the State without first getting the consent of my Parole Officer.
". . . .
 "4. I shall not use narcotic drugs, or frequent places where intoxicants or drugs are sold, dispensed, or used unlawfully.
". . . .
"7. I shall not violate any law.
". . . .
 "9. I shall promptly and truthfully answer all inquiries directed to me by the State Board of Pardons Paroles and my Parole Officer and allow that Officer to visit me at my home, employment site or elsewhere, and carry out all instructions my Parole Officer gives.
". . . .
 "14. I shall not own, possess or have under my control a firearm or ammunition of any kind. . . ."
On July 13, 1988, Mrs. Teri Luker, the defendant's parole officer, received information from narcotics investigator Terry Hicks of the Mobile Police Department which indicated that the defendant might be involved in drug use or drug dealing. Upon hearing these reports, Mrs. Luker asked the defendant to come in to her office. The defendant appeared at the parole office on July 15, denied the allegations of drug use, and agreed to submit to a drug screen urine test. The defendant submitted a specimen for urinalysis on July 15, and Mrs. Luker sent the specimen to the Department of Forensic Sciences.
The defendant continued to make his regular monthly visits to his parole officer, appearing on August 1 and September 1, 1988. On both visits the defendant stated that he was still living at the address to which he had been paroled. However, Mrs. Luker learned that during this time the defendant was living at a different address, and was seen driving a Mercedes automobile with a cellular telephone and "wearing a lot of gold [jewelry]." On October 5, or sometime shortly before October 6, 1988, Mrs. Luker received the forensics report on the defendant's urine test and it was positive for cocaine. She prepared a warrant for the defendant's arrest for parole violation.
Accompanied by three police officers, Mrs. Luker went to the defendant's residence on October 6. The defendant, who admitted the officers to his apartment at approximately 8:00 a.m., was arrested, handcuffed, and detained in the living room with Mrs. Luker while the other three officers made a "sweep" of the residence to check for other occupants of the premises.
The officers heard a young child crying in the back of the apartment and, upon entering the rear bedroom, they saw a large amount of currency, pistol bullets, *Page 1311 
and expensive clothing and jewelry in the room. The room contained both men's and women's clothing. The officers reported their observations to Mrs. Luker, who determined that a full-scale search of the premises should be conducted. Mrs. Luker called Mr. James R. Lee, District Supervisor of the parole office, to "advise him that they were in the process of searching the residence."
A search of the rear bedroom disclosed a .357 Magnum pistol, $3270 in cash, several flight bags and airline ticket receipts for trips to Los Angeles in the defendant's name, and large amounts of expensive clothing, shoes, and jewelry. Officer David Green, who assisted in the search, testified that he saw 18 pairs of Pierre Cardin men's shoes. He also recalled:
 "The furniture throughout the house, the apartment was what I would consider luxuriously furnished. The furniture, pictures on the wall, everything was new. The clothing in the master bedroom was expensive clothing, very excessive for any one individual. I mean talking 30 or 40 pairs of expensive shoes, watches, numerous Seiko watches, expensive jewelry, sweaters in the closet. I don't know, 30, 40, 50 sweaters. Bags and bags of new clothing."
The defendant had reported to his parole officer that he was employed at Deas Tire Company as a tire recapper and that he was also engaged in his own lawn service business. The officers found no work clothes during the search of the defendant's residence. They found a business checkbook for Toney's Lawn Service and noted that the last check written on the business account had been written eight months previously.
A search of the kitchen revealed a metric triple-beam scale containing a white powder residue. The scale was on a shelf in an open pantry.
Two young children were present in the residence at the time of the search. During a conversation among the officers concerning what arrangements should be made for the children when the defendant was taken away in custody, the defendant stated that Caroline Rouser, the children's mother, would return shortly. He also told the officers that Ms. Rouser had the keys to a white Oldsmobile which was parked behind the residence. The officers determined that the Oldsmobile was registered to the defendant.
Soon thereafter, Ms. Rouser drove up in a pick-up truck. When she entered the apartment, the officers removed a set of keys from her purse, and then unlocked and searched both vehicles, the truck and the Oldsmobile. No contraband was found in the truck. In the trunk of the Oldsmobile was a small flight bag or shaving kit containing a white powder later determined to be 889.78 grams, or 1.94 pounds, of cocaine.
 I
The defendant first argues that the trial court erred by denying his motion to suppress the evidence, which he claims was the fruit of an illegal search. We do not agree.
In Griffin v. Wisconsin, 483 U.S. 868, 107 S.Ct. 3164,97 L.Ed.2d 709 (1987), the Supreme Court held that the warrantless search of a probationer's home on less than probable cause does not violate the Fourth Amendment if it is "carried out pursuant to a regulation that itself satisfies the Fourth Amendment's reasonableness requirement." 483 U.S. at 873,107 S.Ct. at 3167. The Court determined that a Wisconsin regulation "permit[ting] any probation officer to search a probationer's home without a warrant as long as his supervisor approves and as long as there are 'reasonable grounds' to believe the presence of contraband — including any item that the probationer cannot possess under the probation conditions" satisfied the reasonableness requirement of the Fourth Amendment. 483 U.S. at 870-71, 107 S.Ct. at 3166. A reading of the court's opinion and the authorities upon which it *Page 1312 
relied (most notably Morrissey v. Brewer, 408 U.S. 471,92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), dealing with the rights of parolees) makes it clear that the holding is applicable to parolees as well as probationers. See Griffin v. Wisconsin,483 U.S. at 873-74, 107 S.Ct. at 3168.
The record shows that the Alabama Board of Pardons and Paroles has a regulation governing the search of a parolee's residence. That regulation is in all relevant respects identical to the Wisconsin regulation upheld inGriffin, and it provides, in pertinent part, as follows:
"Search of Living Quarters or Property
 "A search of a probationer's or parolee's quarters or property may be conducted by an officer of the Department if there are reasonable grounds to believe that the quarters or property contain contraband. Approval of the District Supervisor shall be obtained unless exigent circumstances, such as suspicion the probationer or parolee will destroy contraband or use a weapon, require search without approval.
". . . .
"Reasonable Cause
 "In deciding whether there are reasonable grounds to believe that someone under supervision possesses contraband or that their living quarters or property contains contraband, an officer should consider the observation of other probation and parole officers, information provided by informants, and the reliability of the informant relied upon.
 "In evaluating reliability, attention shall be given to whether the information is detailed and consistent and whether it is corroborated.
 "Attention should be given to whether the informant has supplied reliable information in the past and whether the informant has reason to supply inaccurate information. Consider the activities of the subject that relates to whether or not they might possess contraband and information provided by them that is relevant to whether they may possess contraband. Consider the experience of yours or another officer's with the client or in a similar circumstance. You may consider prior seizures of contraband from the subject and the need to verify compliance with rules of supervision and the state and federal law."
Board of Pardons and Parole, Probation and Parole OfficersManual, paragraph 166.04 (Jan. 1988); (R-299, 300).
The defendant attempts to distinguish Griffin in three ways. First, he claims that the Alabama regulation does not govern the legality of the search conducted here because the regulation was promulgated in November 1987, seven months after the defendant was paroled in April 1987. Mrs. Luker conceded on cross-examination by defense counsel that the parole certificates for inmates released from confinement after November 1987 include the following additional condition, of which the defendant had no notice:
 "I shall make myself available for searches and/or tests when ordered by the parole officer and that includes, but is not limited to, urinalysis, breathalyzer, and blood samples, or a search of the residence, vehicle or any property under my control."
The same lack of notice situation, however, was present inGriffin. Griffin was placed on probation in 1980, the Wisconsin regulation took effect in 1982, and the search occurred in 1983. The Supreme Court did not address the issue of Griffin's lack of notice, observing only that the regulation was "in effect at the time of the search." Griffin, 483 U.S. at 871 n. 1, 107 S.Ct. at 3166 n. 1.
The United States Court of Appeals for the Ninth Circuit addressed the notice question in United States v. Duff,831 F.2d 176 (9th Cir. 1987). In that case, the appellant-probationer argued that he had been denied due process because he was not notified, at the time he was placed on probation, that he would be subject to a urine *Page 1313 
drug screen test. The Court of Appeals assumed that the drug test was a warrantless search, 831 F.2d at 178, but nevertheless concluded:
 "We find no due process violation in the fact that Duff was not given notice before the drug testing that he would be subject to such testing. '[Although] [i]t is an essential component of due process that individuals be given fair warning of those acts which may lead to a loss of liberty,' [United States v.] Dane, 570 F.2d [840] at 843 [(9th Cir. 1977), cert. denied, 436 U.S. 959, 98 S.Ct. 3075, 57 L.Ed.2d 1124 (1978)]. Duff had ample notice from the general terms of the court's probation conditions and the specific terms of the probation officer's instructions that he was prohibited from using illegal drugs. . . . Due process does not require that prior notice be given of the techniques through which noncompliance will be detected."
Duff, 831 F.2d at 179 (emphasis added). Here, the defendant was given notice that he was to obey the law and was given specific written notice that he was to refrain from the use of drugs. We agree with the Ninth Circuit that his failure to receive notice of the methods by which his noncompliance with these probation conditions would be detected does not invalidate the search.
Second, the defendant argues that even if the Alabama regulation is reasonable on its face and governs the search here, Griffin does not apply and the search was nevertheless unlawful because Mrs. Luker did not have "reasonable grounds to believe that [his] quarters or property contain[ed] contraband." He insists that the positive drug test indicating that he had used cocaine on or before July 15 did not give his probation officer reasonable grounds to believe that he would have contraband in his possession two and one-half months later on October 6.
This argument must be rejected in light of Griffin alone. There the Supreme Court upheld the Wisconsin Supreme Court's decision that an unsubstantiated report by a police officer that the probationer " 'had' or 'may have had' " guns in his possession was sufficient to meet the "reasonable grounds" standard. 483 U.S. at 875, 107 S.Ct. at 3169. Here, Mrs. Luker had indisputable proof of the defendant's drug use. Although the drug screen test indicated drug use two and one-half months before the search, the time lapse represented only a delay in the receipt of the results by Mrs. Luker, not a purposeful deferral of action on her part. She prepared an arrest warrant almost immediately upon learning the test results.
In light of the defendant's agreeing, as a condition of his parole, that he would "not own, possess or have under [his] control a firearm or ammunition of any kind," the presence of the pistol bullets sighted during the sweep of the residence immediately following the defendant's arrest also provided Mrs. Luker with "reasonable grounds" to conduct a search.
Third, the defendant maintains that Griffin does not apply and that the search was unlawful because the probation officer did not comply with the terms of the regulation requiring her supervisor's approval prior to the search. Initially, we note that the Supreme Court's approval of the Wisconsin regulation's constitutionality had nothing to do with the provision requiring a supervisor's approval prior to a search. The Court noted:
 "The dissenters assert that the search did not comport with all the governing Wisconsin regulations. There are reasonable grounds on which the Wisconsin court could find that it did. But we need not belabor those here, since the only regulation upon which we rely for our constitutional decision is that which permits a warrantless search on 'reasonable grounds.' The Wisconsin Supreme Court found the requirement of 'reasonable grounds' to have been met on the facts of this case and, as discussed earlier, we hold that such a requirement, *Page 1314 
so interpreted, meets constitutional minimum standards as well. That the procedures followed, although establishing 'reasonable grounds' under Wisconsin law, and adequate under federal constitutional standards, may have violated Wisconsin state regulations, is irrelevant to the case before us."
Griffin, 483 U.S. at 880 n. 8, 107 S.Ct. at 3171 n. 8 (emphasis added).
Moreover, in this case, the probation officer complied with the governing regulation requiring her supervisor's prior approval for the search "unless exigent circumstances, such as suspicion the probationer or parolee will destroy contraband or use a weapon, require search without approval." Mrs. Luker testified that she informed her supervisor contemporaneously with the search but did not seek his prior approval because she "felt like it was exigent circumstances and that was what the Board policy was." In light of strong indications, at the time Mrs. Luker ordered a full-scale search, that the defendant was dealing in drugs and possessed a pistol, Mrs. Luker's suspicion that the defendant would "destroy contraband or use a weapon" was reasonable.
 "Part of [a parole officer's] job [is] to be suspicious in the interest of supervision — and he [is] to use his judgment and knowledge of Defendant in evaluating the suspicions and deciding how to investigate them. When the record shows, as it does here, a pattern of events giving rise to a reasonable suspicion that Defendant was violating the conditions of his [parole] and that the [parole] officer acted reasonably in his investigation, the Court will not . . . try to second-guess the officer on his evaluation of any of the underlying occurrences."
United States v. Giannetta, 711 F. Supp. 1144, 1145 n. 1 (D.Me. 1989). Another fact contributing to the existence of exigent circumstances was the presence of the two small children in the residence. This fact supplied the indication that another adult person or persons had access to or lived in the residence.
 II
Citing Korreckt v. State, 507 So.2d 558 (Ala.Cr.App. 1986), the defendant maintains that the evidence was insufficient to connect him with the cocaine found in the white Oldsmobile. He insists that because the keys to that vehicle were, at the time of the search, in the possession of Caroline Rouser, the State's evidence did not exclude her as the one in constructive possession of the cocaine inside the vehicle.
He also claims that because the bedroom where the bullets and currency were found contained both men's and women's clothing, there was no evidence linking him, to the exclusion of Ms. Rouser, to those items. Finally, he insists that because he and Ms. Rouser lived in the residence together, there was no showing that the scales in the kitchen pantry belonged to him rather than to her.
Korreckt is not authority for the proposition that the State failed to connect the defendant to the contraband in the Oldsmobile. In Korreckt, this court held that the State had not met its burden of proving the accused's knowledge of the contents of a truck from the mere fact that the accused had the truck in his physical possession and drove it, when the truck was owned by a third party and the accused "had no right to exclude the legitimate owner." 507 So.2d at 564. Here, however, the Oldsmobile was parked behind the defendant's residence, was in the defendant's physical presence, and the defendant was the record owner of the Oldsmobile. The State's witnesses testified that they had seen the defendant driving the Oldsmobile and they had not seen Ms. Rouser driving it. The defendant's witnesses testified that both the defendant and Ms. Rouser drove the car. Under the circumstances of this case, it is a legitimate inference that both Ms. Rouser and the defendant knew of the presence of the cocaine in the Oldsmobile.
The defendant's argument that the State, in order to meet its burden of proving his *Page 1315 
guilty knowledge, must have excluded the possibility of Ms. Rouser's guilty knowledge, is incorrect. "When the accused was in nonexclusive possession of the premises upon which the illegal substance was discovered, . . . suspicion may arise that all the inhabitants of the premises knew of the presence of the illegal substance. Temple v. State, 366 So.2d 740
(Ala.Cr.App. 1978)." Bragg v. State, 536 So.2d 965, 967
(Ala.Cr.App. 1988) (emphasis added). "However, this suspicion alone is not adequate to infer knowledge. The suspicion must be supported by evidence connecting the accused with the illegal substance." 536 So.2d at 967-68.
The combination of the following circumstances strongly connected the defendant with the cocaine in the Oldsmobile: (1) The defendant had tested positive for cocaine use two and one-half months previously. (2) Airline ticket receipts in the defendant's name showed that he had made several recent trips, in violation of his parole, to Los Angeles which, the State's evidence established, was the "number two major source location in the United States for cocaine." (3) A triple-beam scale, a standard "accoutermen[t] of drug trafficking," Segura v. UnitedStates, 468 U.S. 796, 801, 104 S.Ct. 3380, 3383, 82 L.Ed.2d 599
(1984), was in an open pantry in the kitchen. A pistol, bullets, and a large amount of cash, also routinely found in places where drug dealing occurs, see Robinette v. State,531 So.2d 697, 699 (Ala. 1988), were found in the residence. (4) The defendant, who had informed his probation officer that he was working for wages at tire recapping and lawn service jobs, had no work clothes and was pursuing a lavish and expensive lifestyle.
 " '[T]he jury was entitled to ponder the interrelationship of all these evidentiary items.' [United States v.] Staten, 581 F.2d [878] at [886 (D.C.App. 1978)]; United States v. Smith, 171 U.S.App. D.C. 342, 520 F.2d 74, 76 (1975). 'Circumstantial evidence sufficient to support a jury's finding of guilt may be found in the accumulation of several relatively insignificant pieces of evidence, or it may be presented in the form of a single highly significant or incriminating event.' United States v. Morando-Alvarez, 520 F.2d 882, 884-85 (9th Cir. 1975). In considering the weight to be given evidence, 'courts and juries must use common sense, common reason, and common observation as well as a common knowledge of the usual acts of men and women under given circumstances.' Thompson v. State, 21 Ala. App. 498, 499, 109 So. 557 (1926)."
German v. State, 429 So.2d 1138, 1143 (Ala.Cr.App. 1982). In this case, "the evidence excluded every reasonable hypothesis except that of guilt." Robinette v. State, 531 So.2d at 699.
 III
The circuit judge sentenced the defendant to a term of life imprisonment under the habitual offender provision of §13A-5-9(b)(3), but failed to impose the mandatory fine set out in the drug trafficking statute.[1]
Under the drug trafficking statutes, imposition of the stated fine is mandatory. *Page 1316 
See Moynes v. State, 568 So.2d 392, 394 (Ala.Cr.App. 1990);Nobles v. State, 555 So.2d 308 (Ala.Cr.App. 1989); Sears v.State, 479 So.2d 1308, 1314 (Ala.Cr.App. 1985). The amount of the fine represents a legislative assessment of the punishment due the offender and is not subject to a judicial interpretation of reasonableness under the particular facts of any one case. Neither this court nor the trial court has the authority to disregard the legislatively mandated fine in drug trafficking cases.
Therefore, this cause is remanded for proper sentencing. The circuit court is directed to impose the mandatory $100,000 fine upon the defendant in addition to the term of imprisonment already imposed and to make a return to this court within 60 days reflecting that action.
REMANDED WITH DIRECTIONS.
All Judges concur.
[1] Although the indictment in this case charged a violation of §20-2-80(2), that section was not in existence on October 6, 1988, the date of the instant offense. Section 20-2-80 was amended and transferred, effective September 30, 1988, to §13A-12-231. See Act No. 88-918, § 2, 1988 Ala. Acts 512. The indictment is, of course, valid, notwithstanding the miscitation of the applicable Code section. Dentmon v. State,568 So.2d 416 (Ala.Cr.App. 1990). The applicable trafficking statute here is § 13A-12-231(2)(b). It is virtually identical to former § 20-2-80(2), and provides, in pertinent part:
 "(2) Any person who knowingly sells, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, 28 grams or more of cocaine . . . is guilty of a felony, which felony shall be known as 'trafficking in cocaine.' If the quantity involved:
". . . .
 "b. Is 500 grams or more, but less than one kilo, such person shall be sentenced to a mandatory minimum term of imprisonment of five calendar years and to pay a fine of $100,000.00."